BEIFUSS ET AL., APPELLANTS, *v.* WESTERVILLE BOARD OF EDUCATION, APPELLEE.

[Cite as Beifuss *v.* Westerville Bd. of Edn. (1988), 37 Ohio St. 3d 187.]

(No. 86-1697—Submitted March 1, 1988—Decided June 22, 1988.)

188

*Cloppert, Portman, Sauter, Latanick & Foley, Frederick G. Cloppert, Jr., Frederick A. Portman* and *Michael J. Hunter,* for appellants.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *James P. Burnes,* for appellee.

LOCHER, J. The primary issue presented in this action is whether a public school board of education can be held liable for prejudgment interest on damages assessed in a contract action. We hold in the negative and, accordingly, affirm the decision of the court of appeals.

It is well-established that "[i]n the absence of a statute requiring it, or a

promise to pay it, interest cannot be adjudged against the state for delay in the payment of money." *State, ex rel. Parrott, v. Bd. of Public Works* (1881), 36 Ohio St. 409, paragraph four of the syllabus; *State, ex rel. Nixon,* v. *Merrell* (1933), 126 Ohio St. 239, 246, 185 N.E. 56, 58; *Lewis* v. *Benson* (1979), 60 Ohio St. 2d 66, 67, 14 O.O. 3d 269, 397 N.E. 2d 396; *State, ex rel. Home Care Pharmacy, Inc.,* v. *Creasy* (1981), 67 Ohio St. 2d 342, 344, 21 O.O. 3d 215, 216, 423 N.E. 2d 482, 484; *State, ex rel. Montrie Nursing Home, Inc.,* v. *Creasy* (1983), 5 Ohio St. 3d 124, 126-127, 5 OBR 258, 260, 449 N.E. 2d 763, 766. However, a contrary rule has been applied with regard to interest assessed against a municipal corporation. See *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363, 21 O.O. 3d 228, 423 N.E. 2d 1099.

Appellants initially contend that interest should be assessed against a public school board just as it is assessed against a municipal corporation. We disagree. Although a public school board is not *per se* a state agency controlled by the State Personnel Board of Review, it has long been recognized as quite different from a municipal corporation. "City and village school districts constitute a part of the state policy in promoting and fostering common schools, and have become state agencies in the school system of education contemplated in the constitution. * * * Owing to the very limited number of corporate powers conferred on them, boards of education rank low in the grade of corporate existence, and hence are properly denominated *quasi* corporations. This designation distinguishes this grade of corporations from municipal corporations, such as cities and towns acting under charters or incorporating statutes, which are vested with more extended powers and a larger measure

of corporate life. * * * It possesses but limited powers and small corporate life. A corporation in some sense political, but in no sense a municipal corporation." *Finch* v. *Bd. of Edn. of Toledo* (1876), 30 Ohio St. 37, 46-47. "It is well settled that a board of education is a quasi corporation acting for the public as one of the state's ministerial education agencies 'for the organization, administration and control of the public school system of the state.' " (Citation omitted.) *Wayman* v. *Bd. of Edn.* (1966), 5 Ohio St. 2d 248, 249, 34 O.O. 2d 473, 474, 215 N.E. 2d 394, 395.

Furthermore, a municipal corporation possesses its significant home rule powers pursuant to Section 3, Article XVIII of the Ohio Constitution. On the other hand, a public school board can be accurately described as an "arm" of the state with its direct duties and powers defined extensively in Title 33 of the Revised Code and through its receipt of direct guidance and support from the State Board of Education. "* * * [T]here is no question but that the public school boards, as 'arms or agencies of the state,' * * * are ultimately managed and controlled by the dictates of the General Assembly * * *." (Citation omitted.) *Thaxton* v. *Medina City Bd. of Edn.* (1986), 21 Ohio St. 3d 56, 57, 21 OBR 357, 358, 488 N.E. 2d 136, 137.

Thus, based on the foregoing, we cannot equate public school boards with municipal corporations in this context. We find that the aforementioned "interest rule" should be applied to public school boards as it has been applied to the state and its agencies.

Appellants also contend that this court's decision in *Carbone* v. *Overfield* (1983), 6 Ohio St. 3d 212, 6 OBR 264, 451 N.E. 2d 1229, requires a finding that prejudgment interest should be

awarded in this action. *Carbone* held in its syllabus that: "The defense of sovereign immunity is not available to a board of education in an action seeking damages for injuries allegedly caused by the negligence of the board's employees." Appellants urge this court to broaden the scope of the *Carbone* decision which eliminated the defense of sovereign immunity for public school boards in *tort* actions and to abandon our longstanding rule in *contract* actions that, in the absence of a statute requiring it, or a promise to pay it, interest cannot be assessed against the state for delay in the payment of money. We decline appellants' invitation to do so. In *State, ex rel. Home Care Pharmacy, Inc., supra,* and *State ex rel. Montrie Nursing Home, Inc., supra,* we refused to abandon the interest rule despite the fact that prejudgment interest was allowable in cases filed against the state in the Court of Claims under R.C. 2743.18. Moreover, while *Carbone* created *tort* exposure for public school boards, we refused to judicially expand a public school board's *contractual* liability. Judicial intrusion into the matters of contracting parties is an extreme measure which should occur sparingly, if at all. We find that such an expansion of a public school board's contractual liability should be created through clearly expressed legislation[1] by the General Assembly or by the parties themselves at the bargaining table.

Therefore, we hold that a public school board of education is not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment. In the case *sub judice,* there is no contractual duty on the appellee to pay interest on the back-pay award. Nor is there any statutory authority requiring the payment of prejudgment interest by this governmental entity. Accordingly, we find that appellants were not entitled to prejudgment interest on the back-pay awards and affirm the judgment of the court of appeals on this issue.

Finally, appellee maintains that the court of appeals erred by affirming the trial court's decision on remand to award relief to appellant Gloria Fitzpatrick.[2] We find that this argument should have been raised on appeal from the initial decision of the court of appeals in *Beifuss* v. *Westerville Bd. of Edn.* (Dec. 18, 1984), Franklin App. No. 83AP-775, unreported (hereinafter *"Beifuss I"*). In the complaint filed against appellee, Fitzpatrick claimed that she was entitled to twenty half-days of extended service during the 1982-1983 school year because her 1981-1982 contract was automatically renewed. The first decision of the trial court held that Fitzpatrick was bound by her new contract and that she was only entitled to ten half-days of extended service under the terms of that contract. In *Beifuss I,* the court of appeals reversed and held that Fitz-

---

[1] Reading R.C. 1343.03(A) and 3313.17 *in pari materia,* as suggested by appellants, does not clearly express any intention of the legislature to assess prejudgment interest against a public school board in this type of action.

[2] In *Brown* v. *Borchers Ford, Inc.* (1977), 50 Ohio St. 2d 38, 4 O.O. 3d 89, 361 N.E. 2d 1063, paragraph one of the syllabus, this court held: "Certification of the record of the case to the Supreme Court, because of a conflict between judgments of the Courts of Appeals upon any question, brings the entire case, not merely the certified question, before this court for review."

patrick was employed by appellee during the 1981-1982 school year pursuant to two separate agreements. The court concluded that both contracts were subject to automatic renewal since appellee did not give a timely notice of non-renewal. Accordingly, the court held that:

"* * * Plaintiff Fitzpatrick likewise must be deemed reemployed, although her status is not as well defined since she apparently was employed only as a substitute teacher under the prior limited contract, but was employed as a part-time teacher under the new limited contract for the 1982-83 school year."

On remand, the trial court awarded back pay to Fitzpatrick for the ten half-days of extended service by which the appellee had reduced her compensation for the 1982-1983 school year. In the decision of the court of appeals currently before us, the court of appeals held:

"* * * After a full review of the record, briefs, arguments of counsel, and the applicable statutes, this court is of the opinion that the trial court properly followed our earlier decision in awarding Gloria Fitzpatrick payment for the additional ten half-days of extended service. * * *" *Beifuss* v. *Westerville Bd. of Edn.* (Aug. 12, 1986), Franklin App. No 86AP-296, unreported.

A review of the court of appeals' decision concerning the automatic renewal of the contracts of all the appellants, including Fitzpatrick, indicates that the court's conclusion was that Fitzpatrick was reemployed for the 1982-1983 school year under the same terms as her 1981-1982 basic and supplemental contracts. Appellee's arguments before this court should have been raised on appeal from *Beifuss I.*

Since appellee chose not to appeal[3] the first appellate court disposition on the Fitzpatrick issue, that disposition became the "law of the case" and appellee is bound by that decision. See *Hawley* v. *Ritley* (1988), 35 Ohio St. 3d 157, 519 N.E. 2d 390.

Accordingly, based on the foregoing, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., concur in part and dissent in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur with the decision of the majority to award the teachers back pay. I dissent, however, with the majority's decision not to award prejudgment interest.

R.C. 3313.17 provides that "[t]he board of education of each school district shall be a body politic and corporate, and, as such, capable of *suing and being sued, contracting and being contracted with * * *.*" (Emphasis added.) This statute clearly anticipates the board of education as a potential litigant. I feel it should be subject to the same rules and doctrines as any other litigant.

This becomes important when considering whether R.C. 1343.03 applies to this case. R.C. 1343.03(A) provides in pertinent part: "* * * [W]hen money becomes due and payable * * * upon all judgments, decrees, and orders of any judicial tribunal for the payment of

---

[3] Appellee did file a notice of appeal on January 17, 1985. However, it was withdrawn on February 6, 1985.

money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."

It is appellee's position that R.C. 1343.03 does not apply because, since the school board is an agency of the state, it is not bound by the provisions of a general statute without the state first giving express consent to be so bound. *State, ex rel. Parrott, v. Bd. of Public Works* (1881), 36 Ohio St. 409. I do not agree with appellee's contention.

This court has explicitly separated boards of education from the protection offered by *Parrott*. Therefore, the board of education should be treated like any other litigant and be subject to the general statutes. *State, ex rel. Bd. of Edn. of Springfield City School Dist., v. Gibson* (1935), 130 Ohio St. 318, 4 O.O. 352, 199 N.E. 185, provides in the syllabus that: (1) immunity attaching to a state does not accrue to the benefit of a board of education or school district; (2) a board of education or school district clothed with the capacity to sue and be sued is thereby rendered amenable to the laws governing litigants; and (3) where a statute does not expressly exempt a subordinate political subdivision from its operation, the exemption therefrom does not exist.

This court again held in *Brown* v. *Bd. of Edn.* (1969), 20 Ohio St. 2d 68, 49 O.O. 2d 347, 253 N.E. 2d 767, that *Gibson, supra,* was still good law and that a school board is subject to the same rules and doctrines as ordinary litigants where an action arises from the type of activities authorized by R.C. 3313.17. Since this contract action arises under the board of education's powers granted by R.C. 3313.17, the board is subject to the same rules as any other litigant, including R.C. 1343.03.

There exists a strong policy reason for awarding prejudgment interest against the school board. Without the threat of prejudgment interest, boards of education are permitted to breach contracts and yet face no penalty when they actually do so. I think it is important for this court to remove any incentive for acting in such a manner. The board of education holds a public trust and should not be allowed to abrogate this trust by treating those with whom it contracts in an unfair way and without penalty.

For the foregoing reasons, I believe the court of appeals' decision with respect to prejudgment interest should be reversed and the judgment of the trial court reinstated. Accordingly, I must respectfully dissent from the decision of the majority not to award prejudgment interest.

SWEENEY and H. BROWN, JJ., concur in the foregoing opinion.